The majority of the Judges, in this case, after due consideration, were of opinion, that the nonsuit ought to be set aside, and the cause once more reinstated on the docket for trial, on the second ground taken in support of this mo- ' t'ion.
On the first ground, however, they concurred in opinion with the other judges, in principle, that on a trial before a jury, wherever it appears that the evidence is insufficient to make out the plaintiff’s case, or where there is a total failure of proof necessary for that purpose, it is the duty of the judge to order a nonsuit, whether the plaintiff consent or not, because there can be nothing to send to the jury to found their verdict upon, and, consequently, any verdict they could give would be a nugatory act. That this point had been determined in the case of Brown and Frost, after solemn argument, in Charleston, in 1798, and it had been the invariable practice both before and since.
On the second ground, with respect to the production of the writ oí ft. fa. on the trial of an issue, where the plaintiff’s title to lands depends upon a sheriff’s deed, they were of opinion that it was not necessary to produce it. That these sales being made by operation of law, and by a public officer, entrusted with the execution of the law, duly appointed and sworn for that purpose, the same degree of faith and credit is due to his deed, under hand and seal, as could or ought to be given to any return on the back of an execution, if it had been produced, for the one act is as much the act ©f the sheriff, and as much within the line of his official duty, as the other ; and they are equally entitled to credit in the eye of the law.
In private transactions, where men act as agents cr attorneys for each' other, in pursuance of private powers, their authority must be shewn, and nothing is to be presumed in such cases but what is proved. Whereas, in the execution of the law, and in pursuance ef a. public authority, *446 founded on the proceedings of the courts of justice, every thing concomitant with the execution of a public trust by the ofSeers of justice is to be presumed in their favour, until irregularities or violations of their duty are shewn ; especially after a lapse of years, when it would be as difficult to shew that every punctilio of the law was complied with in making a sheriff’s sale, as it would be to shew that all the requisites of the rules and practice of the court had been complied with before the judgment was entered up.
The recitals in a sheriff’s deed, under his hand and seal, ought to be received as an official return of his proceedings in the final completion of the suit, as much as his return to any part of the proceedings in the cause, from the service of the first process down to his giving the plaintiff the fruits of his judgment; and the law will not presume that the sheriff has done wrong, or certified what is not true. Another strong reason why great faith and credit ought to be given to so high and confidential an officer of justice, is, that: it very frequently happens that partial sales are made under the same execution, and that several separate tracts of land are sold to different persons. It is, therefore, impossible that each purchaser can have the execution delivered over to him. This circumstance is a strong proof that the law never intended nor contemplated that the execution or fi.fa. under which lands were sold, should be delivered to the purchaser, or make any part of his title. On the contrary, the law requires that the execution should be returned into the prothonotary’r, office by the sheriff, that the court might see that justice was done the plaintiff in the action; and if need should require, that further process might be awarded for that purpose, if the plaintiff was not fully satisfied. It is evident, therefore, that this writ is under the power of the sheriff, until this final return is made. A bona fide purchaser has no control over it; and it would be unjust if he should suffer for any neglect or omission of the sheriff, after he had fairly and honestly paid away the purchase-money, and obtained his deed.
See thecas^ of Bulloch v* Thompson} vol. 1. p. 364. .Riley's edit.
It is a notorious fact, however, that the sheriffs of this country, and their deputies, were very negligent in making returns to executions, in many parts of the country, after the revolution ; and many of them still are so, notwithstanding the act of 1791, which was intended, among other things, to guard against that inconvenience. To make their misconduct or irregularities the ground of shaking the titles of those citizens who hold lands under sheriffs’ deeds, would be extremely injurious to a large portion of the citizens of this country, and subversive of the ends of justice.
The case of Bullock and Thompson, quoted in the course of the argument, did not turn on the production or non-production of the fi. fa. under which the land was supposed to have been sold, but on the want of an exemplification of a judgment, which it was alleged had been obtained, and which, consequently, bound the lands then in question ; and it was upon that ground that the sheriff’s deed, which was then offered in evidence, was rejected, as there was nothing before the court to evince a judgment or any subsequent proceedings. There was nothing in that case which had any application to the one now under consideration.
Mr. Justice Waties dissented from this opinion of the majority of the judges, and agreed with the presiding judge on the trial, (Grimke,) that the fi.fa. was an indispensable requisite in the chain of title under a sheriff’s deed, and that it should be produced, or its loss satisfactorily accounted for; and, therefore, that the nonsuit was very regularly and. properly ordered.
Rule for setting aside the nonsuit, and reinstating the cause on the docket a second time, made absolute.
Present, Grimke, Waties, Bay, Johnson, Trezevant and Brevard.